JOHN BREWSTER & others *vs.* WELLINGTON BURNETT.

Suffolk. March 11. — July 19, 1878. COLT & SOULE, JJ., absent.

A purchaser of counterfeit bonds of the United States, in whose possession they are, need not return such bonds before bringing an action to recover back the money paid by him for them.

A purchaser of counterfeit bonds of the United States, which are afterwards redeemed by the United States, may bring an action to recover back the money paid by him for them before repaying the United States.

CONTRACT to recover back money paid, on September 28, 1867, for certain forged and counterfeit bonds of the United States. Writ dated September 24, 1873. Trial in the Superior Court before *Putnam*, J., who directed a verdict for the plaintiff, and reported the case for the consideration of this court. If the ruling was correct, judgment was to be entered

on the verdict; otherwise, a new trial was to be ordered or such order made as the court might direct. The material facts appear in the opinion.

*C. R. Train*, for the defendant.

*C. T. Russell & C. T. Russell, Jr.*, for the plaintiffs, were not called upon.

ENDICOTT, J. This action is brought against the defendant, as surviving partner of the firm of Burnett, Drake & Co., by whom the bonds were sold to the plaintiffs. It appears that upon the dissolution of the firm a sufficient sum was retained by the defendant to pay the claim of the plaintiffs. Immediately after the purchase, the bonds were redeemed by the sub-treasurer of the United States, at New York, and the plaintiffs received full value for the same, upon the agreement and understanding that, if for any reason they were returned from Washington, they should be taken back by the plaintiffs and others substituted in their place or the money repaid. They were returned in a few days to the sub-treasurer as spurious and counterfeit. The plaintiffs were notified to redeem them, and gave notice at once to the firm that the bonds had been returned as spurious, and they should hold the firm liable for their full amount. An action was brought by the United States against the plaintiffs to recover the amount paid by the sub-treasurer, and suits were at the same time begun against other parties to recover money paid under like circumstances upon bonds of a similar character. The question arose in regard to defending these suits, and the defendant stated that the suit against Jay Cooke & Co. was to be a test case, and it was agreed that the plaintiffs should pay a proportional part of the expense of defending it, to be repaid to them by the firm. The firm paid their proportional part of the expenses with other parties, as called upon by the plaintiffs. But the plaintiffs made no contribution, not considering themselves liable. It is obvious that this arrangement was made for the benefit of the defendant's firm.

Before the suit against Jay Cooke & Co. was decided, and within six years from the sale of the bonds, the plaintiffs brought this action against the defendant, as surviving partner, to recover the amount paid for the bonds on the ground that they were forged and counterfeit. See *Cooke* v. *United States*, 91

U. S. 389; *S. C.* 12 Blatchf. C. C. 43. But the case was not tried until after the decision of *Cooke* v. *United States*, and after the plaintiffs had settled with the United States according to the obligation entered into at the time the bonds were redeemed by the sub-treasurer. The bonds were cancelled in the usual manner when redeemed, and have since remained in the possession of the United States. They were produced at the trial by the district attorney of the United States for Massachusetts, who consented to leave them in charge of the court for the purpose of the trial. The plaintiffs have not tendered them to the defendant, and whether they could have been obtained from the United States for that purpose does not distinctly appear. The sub-treasurer was asked at the trial whether he had authority to do so, and, on objection by the defendant, the evidence was excluded. Upon these facts, we are of opinion that the verdict must stand. Only two questions are raised by the defendant.

It is first contended that this action cannot be maintained without returning the counterfeit bonds to the defendant. It has been settled in this Commonwealth that the return of a counterfeit bank note is not essential to the maintenance of an action against the party from whom it was received; that it is entirely worthless, and an offer to return it would be an idle ceremony. *Kent* v *Bornstein*, 12 Allen, 342. *Perley* v. *Balch*, 23 Pick. 283. In *Coolidge* v. *Brigham*, 1 Met. 547, relied on by the defendant, the promissory note was not worthless, for, while the indorsements upon it were forged, the signature of the maker was genuine; and in *Bassett* v. *Brown*, 105 Mass. 551, 557, the stock, although it had little or no market value, was genuine, and it was not shown that the defendant might not have derived some benefit from the shares, if returned at the proper time. Even admitting that the defendant in this case might have derived some benefit from the return of the bonds at the proper time, if he had been able to find the party from whom they were received, it is clear he would not have been entitled to a return while the suit was pending in the courts of the United States for his benefit; and it appears from the evidence reported, and it could well have been found by the jury, that the defendant had no means of ascertaining and was utterly unable to ascertain who the party was. It also appears that the

defendant has the same power to obtain the bonds as evidence against such party, if he should be found, that the plaintiff had at the trial of this case.

The defendant also contends that the plaintiffs had suffered no loss when this suit was brought, and had no cause of action against the defendant, until they repaid the United States, which they did not do till after the date of the writ. This is not an action wherein the plaintiffs seek to recover indemnity for money paid to the United States, but to recover for money paid to the defendant's firm for forged bonds upon the express or implied warranty that they were genuine. No question is made that the bonds purchased were forged and counterfeit, nor is it questioned that the United States were entitled to immediate repayment, by the plaintiffs, of the money paid to them by the sub-treasurer at New York. The plaintiffs, therefore, could have maintained an action against the defendant at any time within six years from the sale. The fact that, for certain purposes and for the benefit of the defendant, it was agreed that the plaintiffs should not repay the United States until the test case was decided, could not affect the right of the plaintiffs to bring an action; although it may fairly be inferred from the arrangement between the parties that the defendant should not be called upon to pay the plaintiffs until the question was decided in the United States courts; consequently, the trial of such an action if commenced should be delayed until that time had arrived, which was the course pursued. The plaintiffs were from the first liable to the United States under their obligation to repay the money received, and this case stands precisely as if the action had been begun before the parties made the agreement. See *Kent* v. *Bornstein*, 12 Allen, 344.

*Judgment on the verdict.*